IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CV-**12-CV-62435-Middlebrooks/Brannon**

TRADESTATION SECURITIES, INC.,

    Plaintiff,

vs.

R.J. O'BRIEN & ASSOCIATES, INC.,

    Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff TradeStation Securities, Inc. ("TradeStation") files its Complaint for Declaratory Relief against Defendant R.J. O'Brien & Associates, Inc., and its affiliated successors and assigns, if any (collectively, "RJO"), under the Clearing Agreement (defined below), and alleges:

### NATURE OF THIS ACTION

1.     TradeStation files this Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201. TradeStation seeks a declaration that it is not obligated, pursuant to the terms of an agreement, to indemnify RJO for the payments RJO incurred in defending against and settling a separate court action.

2.     All conditions precedent to the filing of this action have occurred, or RJO has waived all such conditions precedent. Further, TradeStation is obligated to pay undersigned counsel a reasonable fee for its services in connection with this action.

## PARTIES

3. TradeStation is a Florida corporation with its principal place of business in Plantation, Broward County, Florida and is an online brokerage company.

4. RJO is an Illinois corporation with its principal place of business in Chicago, Illinois and is a futures clearing firm.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1332. This dispute is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred within this judicial district. Moreover, in the agreement at issue, both TradeStation and RJO agreed to a forum selection clause selecting, among other forums, federal court in Broward County, Florida should TradeStation be the party to initiate the proceeding.

## FACTUAL ALLEGATIONS

7. On or about April 2, 2003, TradeStation and RJO entered into a Fully Disclosed Clearing Agreement ("Clearing Agreement") whereby RJO, among other obligations, was to (1) carry futures, investment and trading accounts of customers introduced to RJO by TradeStation, including assuming custody of those customers' account funds and assets, and engaging directly in the receipt from, and distribution to, those customers of their account funds, and (2) clear and settle transactions on a fully disclosed basis for those accounts.

8. The Clearing Agreement included the following relevant provisions, in pertinent part:

1700175_1

- 11.2 <u>Damages.</u> Neither party be [sic] liable for special, indirect, incidental, consequential or punitive damages, whether such damages are incurred or experienced as a result of entering into or relying on this Agreement or otherwise, even if such party has been advised of the possibility of such damages. [TradeStation] and RJO each agree not to assist any claim for punitive damages against the other. [TradeStation] acknowledges and agrees that the clearing fees charged by RJO, and RJO acknowledges and agrees that [TradeStation's] economic position under this Agreement, reflect the allocation of risks including, but not limited to, the foregoing limitation of liability. A modification of the allocation of risks set forth in this Agreement would affect each party's bargain, and in consideration thereof, each party agrees to such allocation of risks.

- 12.1    <u>Broker Indemnification.</u> In addition to any other obligations it may possess under other provisions of this Agreement, [TradeStation] shall indemnify, and hold harmless RJO, and any controlling person of RJO, from and against all claims, demands, proceedings, suits, actions liabilities, expenses, and reasonable attorney's fees (including fees and costs incurred in enforcing RJO's right to indemnification), and costs in connection therewith arising out of any negligent, dishonest, fraudulent or criminal act, error or omission on the part of any of its officers, agents or employees with respect to [TradeStation's] business, [TradeStation's] dealings with Customers or with respect to the transactions contemplated by this Agreement. This paragraph shall be read together with Paragraph 11.1 above, so that each party's indemnification obligations are proportionate to its fault . . . .

- 16.5    <u>Survival.</u> Termination of this Agreement in any manner shall not release [TradeStation] or RJO from any liability or responsibility with respect to any representation or warranty or transaction effected on the books of RJO or from any obligation or liability under this Agreement accruing prior to termination of this Agreement.

9. On or about August 31, 2009, TradeStation and RJO entered into an Omnibus Account Agreement ("Omnibus Agreement"), the purpose of which was to convert the parties' fully-disclosed clearing relationship to an omnibus clearing relationship, and which included the following relevant provisions, in pertinent part:

- 2. **Omnibus Account.** The effective date of this [Omnibus Agreement] shall be the date the undersigned's existent fully-disclosed clearance agreement with RJOB is converted to the omnibus arrangement set forth in this [Omnibus Agreement] (the "Conversion Date"). Notwithstanding the execution and delivery of this [Omnibus Agreement] by the parties, the

1700175_1

> [Clearing Agreement] between the parties, dated April 2, 2003 (including all amendments and modifications thereto) . . . shall remain in effect until the Conversion Date . . . .
>
> \* \* \*
>
> Effective as of the Conversion Date . . ., (i) the [Clearing Agreement] shall terminate (except for survival obligations as specified in Section 16.5 of the [Clearing Agreement]) . . . .

10. The Conversion Date occurred on or about January 2, 2010.

11. Accordingly, on or about January 2, 2010, the Clearing Agreement terminated and all liability and responsibility of TradeStation terminated under the Clearing Agreement, except for any obligation or liability under the Clearing Agreement accruing prior to termination of the Clearing Agreement. At that time, there were no accrued obligations or liabilities under the Clearing Agreement.

12. On April 29, 2011, fourteen (14) months after the Clearing Agreement had terminated, Kenneth P. Silverman, as Chapter 7 Trustee of the bankruptcy estate of Agape World, Inc. and related entities (collectively, "Agape"), filed an adversary proceeding against RJO in the Bankruptcy Court for the Eastern District of New York, which was captioned *Silverman v. R.J. O'Brien & Associates*, Adv. Pro. No. 8-11-09019 (DTE). The Complaint asserted an avoidance claim pursuant to 11 U.S.C. § 548(a) based upon the Agape account that was introduced to RJO by TradeStation and sought to recover at least $14.77 million.

13. On June 2, 2011, RJO demanded that TradeStation indemnify it with respect to the Agape litigation, supplementing its demand on June 28, 2011 with an assertion that, pursuant to Section 16.5 of the Clearing Agreement, and the indemnification provision contained in the Clearing Agreement, TradeStation has an obligation to indemnify RJO which accrued prior to termination of the Clearing Agreement.

1700175_1

14. TradeStation refused to indemnify RJO in June 2011, in response to RJO's demand, on at least two separate, but equally applicable, grounds: (i) Section 16.5, as RJO admitted in its June 28, 2011 communication to TradeStation, only preserved obligations or liabilities under the Clearing Agreement **accruing prior** to the termination of the Clearing Agreement, so even if the costs and liabilities resulting from the claim asserted in the Agape matter were indemnifiable (they are not), no indemnity obligation or liability of any kind accrued, or could have accrued, prior to January 2, 2010, and (ii) the claim for which RJO sought indemnification was not an indemnifiable claim under Section 12.1 of the Clearing Agreement.

15. TradeStation was not a defendant, or otherwise a party, or involved in any way in the defense of RJO in the Agape litigation, including selecting counsel, developing strategy, or settlement discussions and had no duty, under the Clearing Agreement or otherwise, to defend RJO or perform any other specific acts with respect to the Agape litigation.

16. In or about October 2012, RJO settled the Agape litigation with the bankruptcy trustee for $1.3 million and incurred approximately $750,000 in attorney's fees to defend and settle the claims made against it in the Agape litigation.

17. RJO has verbally reasserted its demand that TradeStation is obligated to indemnify RJO with respect to the amount RJO spent to defend and settle the Agape litigation.

18. However, TradeStation does not believe that it has any obligation to repay RJO all or any portion of such amount for at least the two reasons discussed in Paragraph 14.

## PRAYER FOR DECLARATORY RELIEF

19. TradeStation incorporates Paragraphs 1 through 18 as if set forth herein.

1700175_1

20. RJO believes that it is entitled, based upon its interpretation of the Clearing Agreement, to be indemnified by TradeStation for the expenses RJO incurred in defending against and settling the Agape litigation.

21. TradeStation believes, however, based upon its interpretation of the Clearing Agreement, that TradeStation has no obligation to indemnify RJO for the expenses it incurred in defending against and settling the Agape litigation because: (i) when the Clearing Agreement terminated on or about January 2, 2010 there were no accrued obligations or liabilities arising out of the Agape matter since (a) the Agape action against RJO had not even been filed (and would not be for more than another year – April 2011; similarly, no demand for indemnity by RJO was made, and no refusal by TradeStation to indemnify asserted, until June 2011) and (b) the agreement of, and payments made, by RJO to settle the case were not until 2012; and (ii) RJO's indemnification claim is not an indemnifiable claim as described in Section 12.1 of the Clearing Agreement.

22. Accordingly, the parties are in doubt or are uncertain as to the existence or non-existence of their rights under the Clearing Agreement and have an actual, practical, and present need for a declaration by the Court.

23. As a direct and proximate result of the foregoing conflicting positions of the parties, there is an actual, bona-fide controversy between the parties that requires judicial interpretation as to whether TradeStation has any obligation to indemnify RJO under the Clearing Agreement.

24. Accordingly, TradeStation seeks a declaration as to its rights and obligations, if any, relative to the Clearing Agreement.

1700175_1

25. In essence, the purpose of this declaratory decree action is to obtain a judicial interpretation of the Clearing Agreement, as it relates to the indisputable facts involved herein, and determine that TradeStation is not obligated to indemnify RJO for the payments RJO incurred in defending against and settling the Agape litigation.

WHEREFORE, TradeStation requests that this Court enter a final order and judgment declaring that TradeStation is not obligated to indemnify RJO for the payments it incurred in defending against and settling the Agape litigation, an award of prevailing party attorney's fees and costs as provided for in the Clearing Agreement, and for all other relief this Court deems just and proper.

Dated: December 7, 2012

Respectfully submitted,

Bressler, Amery & Ross, P.C.
Counsel for Plaintiff
200 East Las Olas Blvd., Suite 1500
Ft. Lauderdale, FL  33301
Telephone:   954-499-7979
Facsimile:    954-499-7969
Email:          jschwartz@bressler.com

_____
Alex J. Sabo
Florida Bar No. 262821
Jonathan C. Schwartz
Florida Bar No. 51540

1700175_1